UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR 2 8 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PARISA KARAAHMETOGLU, )
Individually and in her capacity as )
mental retardation advocate for N.K., )
)
         Plaintiff, )
) No. 02-1062 (RJL)
         v. )
)
RES-CARE, INC., *et al.*, )
)
         Defendants. )

**MEMORANDUM OPINION**

(March 28, 2007) [#57,59]

Parisa Karaahmetoglu, individually and in her capacity as the Mental Retardation Advocate for N.K., has sued Res-Care, Incorporated, RSCR West Virginia, Incorporated, Mark Landis, a Res-Care administrator and Paul Spaulding, a former Res-Care employee, for violations of the District of Columbia Code and federal law, negligence, intentional infliction of emotional distress, assault and battery, breach of contract and fraud. Currently before the Court is the defendants'[1] motion to dismiss, or in the alternative, for summary judgment. On the basis of the pleadings and the applicable law, the Court GRANTS in part and DENIES in part defendant's motion to dismiss.

---

[1] Paul Spaulding has not joined in the defense. Accordingly, the term "defendants" used here, connotes Res-Care, RSCR West Virginia and Paul Landis.

## BACKGROUND

N.K., a developmentally disabled adult, was committed to the custody of the District of Columbia Superior Court in 1988.[2] Amended Complaint, ¶ 10. In 1997, D.C. contracted Res-Care to provide care and housing for N.K. at its West Virginia residential care facility.[3] *Id* at ¶ 12.

Plaintiff alleges that between 1998 and 2000, N.K. was physically abused by Paul Spaulding, a Res-Care staff member. Among other incidents, plaintiffs allege that in July 1999, Spaulding "punched N.K. in the head" during a patient outing. *Id* at ¶ 45.

In July 1999 West Virginia's Adult Protective Services began investigating allegations that Spaulding had sexually abused another Res-Care resident. Pl.'s Opp. to the Mot. to Dismiss, p. 13. During the course of that investigation, Spaulding's physical assault of N.K. was reported. *Id.* A criminal investigation was initiated in August 1999 and Spaulding was eventually charged with two felony counts of abuse of an incapacitated person. *Id* at p. 14. The case was resolved when he later pled guilty to two misdemeanor charges of neglect of an incapacitated person. *Id.*

Plaintiff contends that Res-Care hired Spaulding despite a history of misconduct and failed to take corrective action when allegations of his sexual and physical abuse

---

[2] In June 1999, Parisa Karaahmetoglu was appointed by the D.C. Superior Court to act as N.K.'s mental retardation advocate pursuant to the Mentally Retarded Citizens Constitutional Rights and Dignity Act of 1978.

[3] Res-Care Incorporated, through its subsidiary, RSCR West Virginia, d/b/a Yellow Springs Services, operated several residential care facilities in West Virginia.

arose. Plaintiff further alleges that Res-Care employees fraudulently concealed N.K.'s abuse from her family.

In May 2003, the plaintiff filed her Amended Complaint in this Court alleging: violations of the District of Columbia Code by all defendants (Counts I, II and III); negligence, negligent hiring, and negligent supervision by Res-Care, and Landis (Count IV, VI and VII); intentional infliction of emotional distress by all defendants (Count V); assault and battery by Res-Care and Spaulding (Count VIII); breach of contract by Res-Care (Count 9); intentional misrepresentation and fraudulent concealment by all defendants (Count X and XI); and violation of the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq,* 42 U.S.C. § 1983 (Count XII). Plaintiff seeks $20 million in compensatory damages, punitive damages and attorney's fees and costs.

Defendants have moved to dismiss, or for summary judgment, of plaintiff's claims for punitive damages, fraud, intentional infliction of emotional distress, assault and battery, violations of D.C. and federal law, as well as the claims against Mark Landis and the individual claims of Parisa Karaametoglu. For the reasons stated below, the Court will GRANT the motion in part and DENY the motion in part.

## STANDARD OF REVIEW

A district court should grant a defendant's 12(b)(6) motion to dismiss when it is clear that no relief could result under any facts consistent with the complaint's allegations.

*Conley v. Gibson*, 355 U.S. 41, 45-47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C.Cir.1997). In evaluating the defendant's motion, the Court will assume the truth of all of the factual allegations set forth in plaintiff's Complaint. *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985).

Under Rule 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* at 248.

## ANALYSIS

### 1. Statutory Claims

In Counts I, II and III of the Amended Complaint, plaintiff alleges violations of the "Mentally Retarded Citizens Constitutional Rights and Dignity Act of 1978," (the "Act"), D.C. Code § 7-1305.10(a), (e) and (f), respectively. Defendants argue that the Act does not create an independent cause of action and, therefore, plaintiffs are limited to remedies

provided for under the common law. The Court agrees.

Section 7-1305.10 of the District of Columbia Code makes it unlawful to mistreat, neglect or abuse mentally retarded wards of D.C. and requires that alleged instances of abuse be reported to the patient's family and advocate. D.C. Code § 7-1305.10(a),(e),(f). Under § 7-1305.14(c), "any person who violates or abuses any rights or privileges protected by this chapter shall be liable for damages as determined by law, for court costs and attorney's fees." D.C. Code § 7-1305.14(c). Although the statute may create a statutory duty, the fact that it allows for damages "as determined by law" suggests that the statute creates only a common law remedy. As the Code does not support an independent cause of action for violations of the statute, and in the absence of any authority to the contrary, the Court must dismiss Counts I, II and III.

Plaintiff has also brought suit under the "Developmentally Disabled Assistance and Bill of Rights Act"("DDABRA"), 42 U.S.C. § 15001, *et seq.,* and 42 U.S.C.A. § 1983 (Count XII).[4] Defendants have moved to dismiss the claim arguing that the DDABRA is merely a funding statute and does not create a private right of action. Defendants further argue that even if the statute allows for suits against state actors to

---

[4] 42 U.S.C. § 1983 provides that:
> every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

force compliance with the Act, defendants cannot be considered state actors and, therefore, are immune from suit. Again, the Court agrees.

The DDABRA provides funding to assist state created and managed programs which are directed to the Act's purpose of assuring that developmentally disabled persons and their families have access to services and support. 42 U.S.C. § 15001, *et seq.*; *Pennhurst State School & Hospital v. Halderman*, 101 S.Ct. 1531, 1536-37 (1981). As such, the statute does not provide plaintiff a private cause of action, but does allow individuals to bring suit against state actors for noncompliance. *Asselin v. Shawnee Mission Medical Center, Inc.*, 894 F.Supp. 1479 (D.Kan. 1995); *Garrity v. Gallen*, 522 F.Supp. 171, 201 (D.N.H.1981). Accordingly, plaintiff must establish that Res-Care was a state actor in order to make out a claim under the DDABRA and § 1983.

In determining whether Res-Care should be considered a state actor for the purposes of liability under Section 1983, the Court will consider: 1) whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the state itself; 2) whether the state has exercised coercive power or provided significant encouragement to the private action; and 3) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295 (2001); *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). Such a determination is necessarily a "fact-bound inquiry," *Brentwood,* 531 U.S. at 298; *Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922, 939 (1982), and here the facts strongly favor the defendant.

First, plaintiff appropriately points out that Res-Care's operations are extensively regulated and that the company benefits from state and federal funding. However, such conditions do not establish *per se* state action for the purposes of § 1983. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974); *Rendell-Baker v. Kohn*, 457 U.S. 830, 840-841 (1982); *Blum*, 457 U.S. 991, 1010-1011 (1982). Indeed, plaintiff has not even established that the provision of residential and rehabilitation services for voluntary commitments should be considered a traditional state function.[5]

Moreover, plaintiff's allegation that the state of West Virginia played an active role in the day to day operation of Res-Care facilities is not supported by the evidence. In particular, Mark Landis, a Res-Care administrator, testified that Res-Care "had a very close relationship with West Virginia Advocates as far as monitoring admissions, discharges, attending ISPs, a lot of different input from a lot of different agencies, outside agencies, to make sure that sure [Res-Care] was also doing the right thing." Landis Deposition, p. 140-143. However, a closer review of the testimony indicates that such "input" was offered only in the years immediately following Res-Care's 1996 take-over of the West Virginia facilities. Simply stated, plaintiff has offered no evidence suggesting, let alone demonstrating, that such state involvement was ongoing or that it

---

[5] Although plaintiff sites *Brown v. Kennedy Krieger Institute, Inc.*, 997 F.Supp. 661 (D.Md. 1998), in support of her argument, the court in *Krieger* dealt with developmentally disabled residents of a private rehabilitation facility who had been *involuntarily* committed by the state.

Case 1:02-cv-01062-RJL Document 79 Filed 03/28/07 Page 8 of 13

was present at the time of the alleged injuries. Accordingly, the Court does not find that Res-Care was a state actor for the purposes of § 1983 liability.

**2. Punitive Damages Claims**

Plaintiff has sued Res-Care for punitive damages, characterizing defendants' conduct as egregious and malicious. In light of the evidence in the record, the Court disagrees and will grant summary judgment for the defendants.

Under West Virginia and District of Columbia law, punitive damages are warranted only when the plaintiff can prove by clear and convincing evidence that the defendant committed a tortious act accompanied by "fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Washington Medical Center, Inc. v. Holle*, 573 A.2d 1269 (D.C. 1990); *Midkiff v. Huntington National Bank of West Virginia*, 511 S.E.2d 129 (W.Va. 1998). Gross negligence is not enough to warrant punitive damages. Instead, the plaintiff must show that the tort committed was aggravated by egregious conduct and was the product of malice or an evil motive. *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929 (D.C. 1995); *Nakajima v. General Motors Corp.*, 857 F.Supp. 100 (D.D.C. 1994).

Plaintiff, has offered no evidence that Res-Care knew of Spaulding's prior history of physical abuse when he was hired. Although plaintiff points out that Spaulding had a

history of physically abusing residents after he was hired, there is no evidence that Res-Care was aware of, or condoned, this misconduct. To the contrary, the record shows that Res-Care fired Spaulding shortly after it first learned that he had abused a Res-Care resident. Landis Deposition, p. 182. Although plaintiff argues that Res-Care's alleged concealment and intentional misrepresentation warrants punitive damages, she has not demonstrated that such conduct, if true, was of such an egregious nature as to warrant punitive damages.[6]

Plaintiff's additional allegation that the abuse at Res-Care's West Virginia facility was part of a larger pattern of abuse and neglect at Res-Care facilities around the country is similarly unavailing. Complaint, ¶ 70. Although a pattern of conduct can support the imposition of punitive damages if the conduct is similar to the conduct that harmed the plaintiff, there is no evidence in this case of a pattern of physical abuse at various other Res-Care facilities. *See State Farm Mutual Insurance Company v. Campbell*, 538 U.S. 408 (2003). At most, the record suggests, repeated acts of negligence, not a pattern of deliberate physical abuse of Res-Care patients.

Finally, Plaintiff has argued that Res-Care should be liable for punitive damages solely because it is vicariously liable for Spaulding's misconduct. Such a position, however, is without support in the law. Indeed, plaintiff's reliance on the West Virginia

---

[6] Although plaintiff has alleged that defendants waited more than a year to report to her N.K's abuse, there are no allegations that abuse of N.K. continued during that time or that Res-Care deliberately concealed the suspected abuse from the state agencies or the investigating authorities.

Supreme Court of Appeal's decision in *Jarvis v. Modern Woodmen of America,* 406 S.E.2d 736 (W.Va. 1991), is misplaced. The court in *Jarvis* did not hold that employers are automatically vicariously liable for punitive damages attributable to their employees. Rather, it held only that the defendant company could be subjected to punitive damages after it had learned of and ignored its agent's tortious conduct. *Id.*

Accordingly, in the absence of a showing by the plaintiff that Res-Care acted with malice or that N.K.'s abuse was part of a pattern of such abuse, the Court will grant summary judgment for the defendants on the punitive damages claim.

### 3. Claims Against Mark Landis

In addition to the Res-Care defendants, plaintiff has sued Mark Landis in his individual capacity. Defendants have moved to dismiss the claims against Landis arguing that the allegations in the Amended Complaint do not support a claim against him personally. As plaintiff has not contested the motion, it will be granted.

### 4. Plaintiff's Individual Claim

Plaintiff has sued on behalf of N.K. and in her individual capacity. According to the defendants, plaintiff's sole individual claim is for emotional distress and should fail because plaintiff was never in the "zone of danger" that harmed N.K. The Court disagrees.

Plaintiff's individual claims, include more than a simple claim for emotional distress. Rather, plaintiff has sued for intentional misrepresentation (Count X) and fraudulent concealment (Count XI), alleging she and N.K. "have suffered damages, including *but not limited to* emotional distress" as a result of defendants' fraud. Therefore, although defendants' argument would have merit in the context of a claim for intentional infliction of emotional distress, it is unpersuasive as to the viability of plaintiffs claims of fraud. Accordingly, defendants motion to dismiss as to plaintiff's individual claims will be denied.

### 5. Fraud Claims

As noted above, plaintiff has sued alleging intentional misrepresentation (Count X) and fraudulent concealment (Count XI). According to the plaintiff, the defendants represented to plaintiff that N.K. was being treated well and that a female attendant would be on duty at the facility at all times—statements the defendants knew to be false (Count X). Plaintiff further alleges that defendants willfully and intentionally concealed from plaintiff the fact that N.K. had been abused by Spaulding in order to ensure that N.K. remained in their care and to protect themselves from litigation (Count XI).

Defendants have moved to dismiss the intentional misrepresentation claim arguing that plaintiff cannot prove that defendants had no intention of delivering on their promises to care for N.K. or to provide a female staff member at the facility. As to the fraudulent

concealment claim, defendants argue that there is no evidence to support the conclusion that defendants intentionally concealed N.K.'s abuse, nor that plaintiffs have shown any harm that resulted from that concealment. The Court disagrees.

In order to prevail on a claim for fraud under the law of the District of Columbia, a plaintiff must prove: 1) a false representation, 2) in reference to a material fact, 3) made with knowledge of its falsity, 4) with intent to deceive, 5) upon which action is taken in reliance on the representation. *Caulfield v. Stark,* 893 A.2d 970, 974 (D.C. 2006). Given the allegations in the Amended Complaint, plaintiff has adequately pled a cause of action for fraud. Given the evidence in the record (i.e. that N.K. was abused in 1999 and that Res-Care did not inform plaintiff until 2000), there remain genuine factual disputes as to whether defendants' conduct constituted fraud. Accordingly, defendants' motion to dismiss or for summary judgment of Counts X and XI will be denied.

### 6. Intentional Tort Claims

Finally, in Counts V and VIII of the Amended Complaint, plaintiff alleges intentional infliction of emotional distress and assault and battery respectively. Defendants have moved to dismiss the claims arguing that Spaulding, not Res-Care, committed the torts alleged. However, as West Virginia law provides that employers can be held vicariously liable for the torts—even intentional torts—of their employees, defendants' motion will be denied. *See Courtless v. Jolliffe,* 507 S.E.2d 136, 140 (W.Va.

1998); *Chapman v. Rahall,* 399 F.Supp.2d 711, 714 (W.D.Va. 2005).

## CONCLUSION

For the reasons stated above defendants' motion to dismiss will be GRANTED as to plaintiff's statutory claims, punitive damages claims and claims against Mark Landis in his individual capacity. Defendants' motion will be DENIED as to plaintiff's fraud claims; intentional tort claims; and individual claims by Parisa Karaametoglu.

                                                                      *[signature]*
                                                                  RICHARD J. LEON
                                                                  United States District Judge